Law Office of Aniela K. Szymanski, Ltd.
Aniela K. Szymanski, Esq.
Nevada Bar Number 15822
3765 E Sunset Rd; ste B9
Las Vegas, Nevada 89120
Phone: (702) 899-8180
*Attorney for Steve Sanson*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| STEVE SANSON, AN INDIVIDUAL,<br><br>VS.<br><br>NEPHI KHALIKI, AN INDIVIDUAL; JOHN DOES I-X; DOE BUSINESS ENTITIES I-X. | Case No.<br><br>COMPLAINT FOR:<br>1. DEFAMATION/LIBEL<br>2. DEFAMATION PER SE<br>3. FALSE LIGHT INVASION OF PRIVACY<br>4. BUSINESS DISPARAGEMENT/ INJURIOUS FALSEHOOD<br>5. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br>6. PUBLIC DISCLOSURE OF PRIVATE FACTS<br>7. CIVIL CONSPIRACY<br>8. CONCERT OF ACTION/ AIDING AND ABETTING<br><br>JURY TRIAL DEMANDED |

STEVE SANSON ("Plaintiff"), by and through undersigned counsel, alleges against Defendants, NEPHI KHALIKI, John Does I-X, and Doe business entities I-X, as follows.

## I. INTRODUCTION

1. This action arises from an intentional and sustained campaign by Defendant Khaliki to destroy Plaintiff's reputation, professional standing, privacy, and personal and

professional relationships, following Plaintiff having published a news story regarding Defendant Khaliki's criminal charges[1].

2. Rather than making an isolated statement concerning Plaintiff, Defendant Khaliki, under the pseudonym Judy Meredith, created and maintained an entire website devoted substantially or exclusively to attacking, disparaging, and publicly portraying Plaintiff in a false and defamatory manner.
3. Defendant Khaliki's website contains numerous false statements of fact concerning Plaintiff, including, without limitation, statements falsely accusing Plaintiff of sexual criminal conduct.
4. Defendant Khaliki has published those statements to the public through the Internet, and re-posted them on various social media platforms, where they are available to Plaintiff's clients, prospective clients, colleagues, professional associates, family members, members of the community, and other third parties.
5. Defendant Khaliki knew that numerous statements published about Plaintiff were false, or acted with reckless disregard for whether they were true or false.
6. Defendant Khaliki nevertheless intentionally created, operated, maintained, and/or promoted the website and continued publishing the false statements after being placed on notice of their falsity.

---

[1] https://yournews.com/2026/09/15/7195033/the-nephi-khaliki-files-republican-politics-revoked-ccw-credentials-arrest/ (last visited October 6, 2026).

7. The website was not an incidental publication. Defendant Khaliki deliberately created a permanent Internet presence dedicated to portraying Plaintiff negatively and causing third parties to view Plaintiff in a false and highly offensive manner.

8. Defendant Khaliki's conduct has caused Plaintiff substantial injury to reputation and, where applicable, professional and economic harm, as well as humiliation, embarrassment, emotional distress, and other damages.

## II. JURISDICTION AND VENUE

9. Plaintiff incorporates by reference paragraphs 1 through 8 as though fully set forth herein.

10. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity exists between Plaintiff and Defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs. The amount in controversy exceeds $75,000, exclusive of interest and costs, because Plaintiff seeks compensatory, general, special, presumed, and punitive damages arising from Defendant's extensive and continuing publication of false and defamatory statements concerning Plaintiff, together with damages for injury to reputation, emotional distress, and other compensable injuries, as well as equitable relief.

11. Plaintiff is a citizen of the State of Nevada.

12. Defendant Khaliki is a citizen of the State of Texas.

13. Upon information and belief, the amount in controversy exceeds $75,000 because Defendant's conduct has caused and continues to cause substantial injury to Plaintiff's reputation, professional standing, economic interests, privacy, and emotional well-being.

14. This Court also has supplemental jurisdiction over related state-law claims pursuant to 28 U.S.C. § 1367 to the extent necessary.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

16. Defendant Khaliki is subject to personal jurisdiction in Nevada because Defendant purposefully directed the challenged conduct toward Nevada and/or Plaintiff, a Nevada resident, and Defendant Khaliki's Internet publications were expressly aimed at Nevada and caused injury to Plaintiff in Nevada.

## III. PARTIES

17. Plaintiff Sanson is an individual residing in Clark County, Nevada.

18. Plaintiff is the President of Veterans in Politics International, a non-profit, non-partisan organization devoted to teaching, educating, organizing and awakening veterans and their families to select, support and vote intelligently for a better world and to protect ourselves from our own government(s). He is also the host and founder of the Veterans in Politics Talk Show. Plaintiff is also a decorated United States Marine Corps veteran.

19. Plaintiff has developed substantial personal and professional relationships and a reputation for honesty, integrity, and transparency in the community of veteran advocacy, politics, and journalism.

20. Defendant Khaliki is an individual residing in Forth Worth, Texas.

21. Defendant Khaliki created, operates, controls, maintains, publishes, promotes and/or contributes to the website located at:

**http://stevesanson.info**

(the "Website").

22. Defendant Khaliki is responsible for the content published on the Website and for the statements concerning Plaintiff described herein.

23. The true names and capacities of DOES I through X are presently unknown to Plaintiff. Plaintiff will amend this Complaint when their identities are discovered.

24. Based on information and belief, Does I through X conspired with Defendant Khaliki, aided and abetted Defendant Khaliki, and or assisted in other substantial ways, the illegal actions of Defendant Khaliki.

## IV. FACTUAL ALLEGATIONS

### A. Defendants Created a Website Devoted to Plaintiff

25. On or about September 16, 2026, Defendants created or began operating the Website.

26. The Website is located at "stevesanson.info" and is accessible to members of the public through the Internet.

27. The Website contains numerous pages, articles, photographs, statements, accusations, and/or other materials concerning Plaintiff. Specifically, the website states that Plaintiff raped an unnamed third party who claimed to have had sought professional assistance from Plaintiff. To date, that third party has not been identified by Defendants.

28. Defendants created the Website for the purpose, in whole or in part, of portraying Plaintiff negatively and damaging Plaintiff's reputation.

29. The Website expressly identifies Plaintiff by name and/or otherwise unmistakably identifies Plaintiff by name and even by url address.

30. The Website also has the prominent title on the first page "He used my child to get close to me, and then he raped me." The Website goes on to say that the "accusation has not been adjudicated, and no criminal charge arising from her account has been identified."

31. The Website post includes about Sanson: “During the reporting of this story, several women . . . described behavior they considered predatory . . . not one was willing to attach her name publicly to what she said.”

32. Defendant Khaliki has repeatedly published, republished, edited, and/or promoted material concerning Plaintiff through the Website onto social media platforms, such as Facebook. On September 16, 2026, Defendant Kaliki posted on his own personal Facebook page (“Nephi Khaliki”), which is open to the public (i.e. does not have privacy settings enabled) the website address and asked the public to click on the link to read the falsehoods about Plaintiff. Khaliki even engaged with commentors on his Facebook post, arguing with the commentors including statements that their comment “makes it look like you’re defending a guilty person” and contextually explains that he is the one who created the url in order to share the unnamed third party’s story.

33. Defendant Khaliki has also caused or encouraged third parties to access, view, share, republish, or otherwise disseminate the Website and its contents through numerous Facebook posts including videos.

34. On or about September 18, 2026, Defendants published Plaintiff’s home address on the Website.

35. Based on information and belief, Defendant Khaliki used a pseudonym Facebook account under the name “Denise Ritter” and shared Plaintiff’s home address on Facebook on September 18, 2026, and then re-posted the same to his personal Facebook page.

36. On or about September 20, 2026, Defendant Khaliki posted on his personal Facebook page a photo of a woman wearing a t-shirt saying “Shoot pedophiles not drugs” and

commented "I'm going to interpret it as you are against Sanson and I thought the shirt's message was fitting."

37. On or about September 20, 2026, Defendant Khaliki posted a video on his Facebook page with the website text superimposed on top of the video feed, calling Plaintiff a "loser and he sucks at what he does," and said "all I did was share a post about a video or whatever accusations someone is making," taunts Plaintiff by saying "never catch me Steve!" Defendant Khaliki again accuses Plaintiff had sexually assaulted a phantom, unnamed woman, Defendant Khaliki specifically cites Plaintiff's reputation, Khaliki also specifically cites his "bigger following" and says "just for the sake of argument lets assume it's all true . . . I want to hear you refute it with facts."

38. On or about September 25, 2026, Defendant Khaliki posted on his personal Facebook page "oh yeah and another female's story is coming out about Sanson. Stay tuned." Defendant Khaliki never shared any such information.

39. On or about September 27, 2026, Defendant Khaliki posted on his personal Facebook page a cartoon image of Plaintiff and a comment, "Is it just me, or does Steve Sanson look like Jon Ponder's illegitimate son?" attempting to draw a connection between an individual who had recently been in Las Vegas news for sexual assault allegations. At about the same time, the Website posted a longer explanation of Jon Ponder's case and the alleged parallels to Plaintiff.

40. On or about September 27, 2026, Defendant Khaliki posted on his personal Facebook page "People have told me to 'Stop' . . . and its funny because someone else told Steve the same thing" and again posted the Website url.

41. On or about September 29, 2026, Defendant Khaliki posted on his personal Facebook page a cartoon image of Plaintiff and a comment "Date of Execution – October 3, 2026."

42. On October 1, 2026, Defendant Khaliki posted on a Facebook page titled "Family Court News – Las Vegas, Nevada" a screenshot of Plaintiff being questioned by Las Vegas Metropolitan Police Department and again alleges a phantom, unnamed "young woman" was assaulted by Plaintiff. The screenshot of Plaintiff being questioned was from a traffic stop Plaintiff was involved in that had nothing to do with sexual assault allegations at all, but Defendant Khaliki purposefully included it in the post to disparage Plaintiff.

43. In the same October 1, 2026, Facebook post, Defendant Khaliki stated he was using satellite footage to surveil Plaintiff's residence and disclosed the occupants of Plaintiff's residence: "Satellite images of Sanson's home where he lives with his wife . . ."

44. Defendant Khaliki continued to re-post the website on his personal Facebook page nearly daily, and continues to do so as of the filing of this complaint.

45. The Website remains accessible to the public.

46. Each continued publication of the Website and its contents has continued to expose Plaintiff to members of the public.

**B. Specific False Statements**

47. Defendant Khaliki published the following statement concerning Plaintiff:

> "He used my child to get close to me, and then he raped me."

48. Defendant published Statement #1 on or about September 16, 2026, on http://stevesanson.info.

49. Statement #1 was false because the Facebook direct message screenshot on the Website is a message written by the poster, not the sender of the message indicating that

Defendant Khaliki was the one who wrote the false statement himself and then attempted to make it appear as he had received the allegation from someone else, the identity of the sender is redacted.

50. Defendant published the following additional statement:

> "Shoot pedophiles not drugs" and commented "I'm going to interpret it as you are against Sanson and I thought the shirt's message was fitting."

51. Defendant Khaliki published Statement #2 on or about September 20, 2026, as a comment on a post to his personal Facebook page.

52. Statement #2 was false because Plaintiff is not a pedophile and no such charges or allegations have ever been brought against Plaintiff.

53. Defendant published the following additional statement:

> "People have told me to 'Stop' . . . and its funny because someone else told Steve the same thing".

54. Defendant published Statement #3 on or about September 27, 2026 on Defendant Khaliki personal Facebook page.

55. Statement #3 was false because it purports to quote a sexual assault that never occurred and that Defendant Khaliki admits has never been adjudicated or criminally charged.

56. Defendants published the following additional statement:

> "During the reporting of this story, several women . . . described behavior they considered predatory".

57. Statement #4 was published on the Website on or about September 16, 2026, and were false because Plaintiff has not "preyed upon" women and the statement itself admits that there are no named sources to the statements.

58. Defendants published the following additional statement:

> "Before you listen to the statement from the young woman accusing Steve Sanson . . . a young woman who claims Steve Sanson assaulted her" paired with an un-related photo of the Plaintiff being questioned during a traffic stop.

59. Statement #5 was published on the Facebook page "Family Court News – Las Vegas, Nevada" on or about October 1, 2026.

60. Statement # 5 was false because it portrayed Plaintiff as having been arrested by law enforcement for sexual assault instead of for a traffic stop.

61. Plaintiff will identify additional statements, pages, URLs, publications, and republications as appropriate through amendment, discovery, and/or exhibits.

62. The statements identified above are representative of the false and defamatory material published by Defendant concerning Plaintiff.

63. Defendants' statements were not mere expressions of opinion. They conveyed or reasonably implied specific, objectively verifiable assertions of fact concerning Plaintiff.

64. The statements were capable of being understood by reasonable readers as factual assertions.

65. Defendant's publications falsely portrayed Plaintiff as a sexual predator and rapist.

### C. Publication to Third Parties

66. Defendant published the statements to third parties through the publicly accessible Website.

67. The Website was and remains available to persons throughout Nevada, the United States, and elsewhere.

68. Among the persons who viewed or became aware of the Website were clients, colleagues, family members, and each individual Facebook user who posted a reaction or comment to Defendant Khaliki's postings.

69. Plaintiff is informed and believes that additional third parties viewed the Website and its contents.

70. Defendants intended that third parties would view and rely upon the publications.

**D. Defendants' Knowledge of Falsity and Malice**

71. Defendant knew that at least some of the statements concerning Plaintiff were false when Defendant published them.

72. Before and/or after publication, Plaintiff informed Defendant Khaliki that the statements were false.

73. Defendant Khaliki acknowledged the requests to cease in his September 20, 2026, video posted to his personal Facebook page.

74. Defendant nevertheless continued to publish and/or republish the statements.

75. Defendant's continued publication demonstrates Defendant's knowledge of the falsity of the statements and/or reckless disregard for their truth or falsity.

76. Defendants also repeatedly acknowledged that none of the allegations that he posted were from sources he was willing to name, and that none of the allegations were officially made.

77. Defendant Khaliki in his video of September 20, 2026, that he was specifically attempting to harm Plaintiff and made ancillary harmful comments to reinforce the point such as Plaintiff is "loser and he sucks at what he does," and "never catch me Steve" taunting Plaintiff by name.

78. Defendant's conduct was intentional, malicious, oppressive, and/or fraudulent.

**E. Harm to Plaintiff**

79. Before Defendant's publications, Plaintiff had a favorable reputation among clients, colleagues, the community and professional associates.

80. Defendant's publications damaged Plaintiff's reputation.

81. Plaintiff has suffered injury to professional and/or personal relationships.

82. Plaintiff has lost and/or been deprived of clients, business opportunities, and professional referrals.

83. Plaintiff has also suffered humiliation, embarrassment, mental anguish, and emotional distress.

84. Defendant's conduct continues to cause harm because the Website remains publicly accessible and searchable through Internet search engines and Defendant Khaliki's social media posts continue.

**V. FIRST CAUSE OF ACTION**

**DEFAMATION—LIBEL**

85. Plaintiff incorporates by reference paragraphs 1 through 84 as though fully set forth herein.

86. Defendant published false statements of fact concerning Plaintiff.

87. The statements were defamatory because they tended to expose Plaintiff to hatred, contempt, ridicule, or obloquy and/or tended to injure Plaintiff in Plaintiff's profession, business, or personal reputation.

88. Defendant published the statements to third parties.

89. The publications were unprivileged.

90. Defendant acted at least negligently with respect to the truth or falsity of the statements.

91. Defendant acted with actual malice because Defendant knew that the statements were false and/or acted with reckless disregard for their truth or falsity.

92. The defamatory publications directly and proximately caused injury to Plaintiff.

93. Plaintiff has suffered actual damages in an amount to be established at trial.

94. Plaintiff is also entitled to general damages for injury to reputation.

95. To the extent permitted by Nevada law, Plaintiff seeks presumed damages where the publications constitute defamation per se.

## VI. SECOND CAUSE OF ACTION

## DEFAMATION PER SE

96. Plaintiff incorporates by reference paragraphs 1 through 95.

97. Defendants' statements falsely accused Plaintiff of rape and sexual assault of a woman who allegedly sough professional assistance from Plaintiff.

98. The statements directly concern Plaintiff's professional and/or business reputation.

99. The statements therefore constitute defamation per se to the extent recognized under Nevada law.

100. Because the statements constitute defamation per se, Plaintiff is entitled to recover presumed damages as permitted by Nevada law.

101. Plaintiff further seeks actual, general, special, and punitive damages to the extent permitted by law.

## VII. THIRD CAUSE OF ACTION

## FALSE LIGHT INVASION OF PRIVACY

102. Plaintiff incorporates by reference paragraphs 1 through 101.

103. Defendants publicly placed Plaintiff in a false light by publishing and maintaining the Website and its false statements.

104. Defendants' publications created a false and misleading portrayal of Plaintiff.

105. The false portrayal would be highly offensive to a reasonable person.

106. Defendants knew that the portrayal of Plaintiff was false or acted in reckless disregard of the falsity of the portrayal.

107. Defendants intentionally created and maintained the Website knowing that members of the public would view the material and form negative impressions concerning Plaintiff.

108. Defendants' conduct has caused Plaintiff substantial harm, including injury to Plaintiff's privacy and dignity, reputational harm, humiliation, embarrassment, and emotional distress.

109. Plaintiff is entitled to recover all damages permitted by Nevada law.

## VIII. FOURTH CAUSE OF ACTION

## BUSINESS DISPARAGEMENT / INJURIOUS FALSEHOOD

110. Plaintiff incorporates by reference paragraphs 1 through 109.

111. Plaintiff has an economic and/or professional interest in Veterans in Politics International.

112. Defendant published false statements concerning Plaintiff's business, profession, services, professional qualifications, and/or commercial reputation.

113. Defendant knew that the statements were false or acted with reckless disregard for their truth or falsity.

114. Defendant published the statements with the intent to injure Plaintiff's business and/or professional interests.

115. Defendant's publications were a substantial factor in causing economic harm to Plaintiff.

116. As a result of Defendant's conduct, Plaintiff suffered economic losses, including loss of sponsorships for his show and loss of clients.

117. Plaintiff's economic losses include, without limitation, lost clients, lost business, lost contracts, and lost revenue.

118. Plaintiff is entitled to recover actual economic damages and all other damages permitted by law.

**IX. FIFTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

119. Plaintiff incorporates by reference paragraphs 1 through 118.

120. Defendant engaged in an intentional and sustained course of conduct directed at Plaintiff.

121. Defendant did not merely make an isolated statement. Defendant created, maintained, and repeatedly published material on an Internet website devoted to attacking Plaintiff.

122. Defendant repeatedly published false accusations concerning Plaintiff despite knowing that the accusations were false and/or despite being informed of their falsity.

123. Defendants' conduct included daily posts on multiple Facebook pages to harass Plaintiff, threats of physical harm including execution, targeting his wife by identifying

that she lives with him at the home address Defendants exposed, republishing false information after demands were made to remove it, and other intentional conduct.

124. Defendants intended to cause Plaintiff emotional distress or acted with knowledge that such distress was the probable result of Defendant's conduct.

125. Defendants' conduct was extreme and outrageous and exceeded all bounds of decency ordinarily tolerated in a civilized community.

126. Defendants' conduct caused Plaintiff severe emotional distress.

127. Plaintiff has suffered emotional distress, anxiety, humiliation, embarrassment, mental anguish, and other damages.

128. Plaintiff is entitled to recover damages in an amount to be determined at trial.

## X. SIXTH CAUSE OF ACTION

## PUBLIC DISCLOSURE OF PRIVATE FACTS

129. Plaintiff incorporates by reference paragraphs 1 through 128.

130. Defendant publicly disclosed information concerning Plaintiff's private life, including his home address and whom he resides with.

131. The information disclosed was private and was not generally known to the public.

132. Defendant disclosed the information to the public through the Website.

133. The disclosure was highly offensive to a reasonable person.

134. The disclosure was not privileged or otherwise legally justified.

135. Defendant knew or reasonably should have known that the information was private and that public disclosure would be highly offensive to Plaintiff.

136. As a direct and proximate result of Defendant's conduct, Plaintiff suffered injury, humiliation, embarrassment, emotional distress, and other damages.

137. Plaintiff is entitled to recover damages as permitted by Nevada law.

**XI. SEVENTH CAUSE OF ACTION**

**APPROPRIATION OF NAME AND/OR LIKENESS**

138. Plaintiff incorporates by reference paragraphs 1 through 137.

139. Defendant appropriated and used Plaintiff's name, photograph, likeness, identity, and/or identifying characteristics on the Website.

140. Defendant used Plaintiff's identity for Defendant's own purposes and/or benefit without Plaintiff's consent.

141. Defendant's use of Plaintiff's identity was not authorized.

142. Defendant's use of Plaintiff's name and/or likeness was intended to attract attention to the Website and/or increase its impact, reach, readership, or dissemination.

143. Plaintiff suffered injury as a result.

144. Plaintiff is entitled to recover all damages permitted by Nevada law.

**XII. EIGHTH CAUSE OF ACTION**

**CIVIL CONSPIRACY**

145. Plaintiff incorporates by reference paragraphs 1 through 144.

146. Defendant entered into an agreement, express or implied, with Denise Ritter, and/or Judy Meredith, and/or John Does I through X to engage in an unlawful course of conduct directed at Plaintiff.

147. The object of the conspiracy was to damage Plaintiff's reputation, harass Plaintiff, cause economic harm to Plaintiff, and publicize false information about Plaintiff.

148. In furtherance of the conspiracy, the participants engaged in overt acts including:

a. creating and/or operating the Website;

b. preparing and publishing false statements concerning Plaintiff;

c. supplying false information concerning Plaintiff;

d. republishing and disseminating the Website;

e. contacting third parties concerning Plaintiff.

149. Each participant knew of and intentionally participated in the unlawful course of conduct.

150. As a direct and proximate result of the conspiracy and the underlying tortious conduct, Plaintiff suffered damages.

## XIII. PUNITIVE DAMAGES

151. Plaintiff incorporates by reference paragraphs 1 through 150.

152. Defendants' conduct was malicious, oppressive, fraudulent, intentional, and/or committed with conscious disregard for Plaintiff's rights.

153. Defendants knew that the statements were false and nevertheless intentionally created and maintained a website designed to disseminate those statements to the public.

154. Defendants continued publishing the statements after being notified of their falsity and the harm they were causing.

155. Defendants' conduct warrants an award of punitive damages to punish Defendant and deter similar conduct.

## XIV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment in Plaintiff's favor and against Defendants as follows:

1. General damages in an amount to be determined by the jury;

2. Special and economic damages in an amount to be proven at trial;

3. Presumed damages for defamation per se to the extent permitted by law;

4. Damages for injury to Plaintiff's reputation;

5. Damages for emotional distress, humiliation, embarrassment, and mental anguish;

6. Damages arising from business disparagement and injury to Plaintiff's professional and/or commercial interests;

7. Damages for invasion of privacy;

8. Punitive damages in an amount sufficient to punish Defendant and deter similar conduct, to the extent permitted by law;

9. Prejudgment and post-judgment interest as permitted by law;

10. Costs of suit;

11. Reasonable attorney's fees to the extent authorized by statute, rule, contract, or other applicable law; and

12. Such other and further relief as the Court deems just and proper.

**XV. DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

/s/ Aniela K. Szymanski
ANIELA K. SZYMANSKI, ESQ.
3765 E. Sunset Rd B9
Las Vegas NV 89120
702-899-8180
Attorney for Steve Sanson